# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| JANE DOE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | NO. 11-cv-01999-JNE-SER |
| | ) | |
| ANOKA-HENNEPIN SCHOOL DISTRICT NO. 11, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| E.R., by her next friend and parent, Quana Hollie, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | NO. 11-cv-02282-JNE-SER |
| | ) | |
| ANOKA-HENNEPIN SCHOOL DISTRICT NO. 11, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT
## OF JOINT MOTION TO APPROVE PROPOSED CONSENT DECREE

Student plaintiff Jane Doe and student plaintiffs K.R., D.F., B.G., D.M.-B., and E.R., by and through their next friends and parents (collectively "Student Plaintiffs"); Defendant Anoka-Hennepin School District, its School Board, and certain school officials named in the complaints (together, the "District"); and the Plaintiff-Intervenor United States[1] hereby submit this Memorandum in Support of the Proposed Consent Decree on behalf of all the parties to this litigation, asserting that the proposed Consent Decree is in the public interest. The Parties therefore request that this Court enter the proposed Consent Decree and order its implementation.

## I. The Proposed Consent Decree Springs From and Serves to Resolve a Dispute Within this Court's Subject Matter Jurisdiction.

First, both the Student Plaintiffs and the Plaintiff-Intervenor United States assert claims within this Court's jurisdiction. *See E.E.O.C. v. Product Fabricators, Inc.*, --- F.3d ----, 2012 WL 264605 at *2 (8th Cir. Jan. 31, 2012) ("[c]onsent decrees should: spring from—and serve to resolve—a dispute within the court's subject-matter jurisdiction") (citing *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986)).

The Student Plaintiffs' complaints raise claims of sex discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title IX"), and claims of sexual orientation discrimination under both the Equal Protection Clause of

---

[1] For purposes of this Memorandum, "United States" refers to the United States Department of Justice ("DOJ") and the United States Department of Education, through its Office for Civil Rights ("OCR").

the 14th Amendment to the U.S. Constitution and the Minnesota Human Rights Act, Minn. Stat. § 363A.13–.14 ("MHRA"). The MHRA instructs, *inter alia*, that public schools may not discriminate on the basis of sexual orientation. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the 14th Amendment and Title IX claims, as they arise under the Constitution or laws of the United States. This Court has supplemental jurisdiction over the Student Plaintiffs' state law claims under 29 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as the Student Plaintiffs' federal claims.

The United States' Complaint-in-Intervention raises claims arising under both Title IV of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000c–2000c-9 ("Title IV"), and Title IX. Title IV vests in the United States authority to enforce the Equal Protection Clause in public schools where alleged discrimination or harassment is based on race, color, religion, sex, or national origin. *See* 42 U.S.C. §§ 2000c–2000c-9.[2] Title IX prohibits discrimination on the basis of sex in education programs and activities operated by recipients of federal financial assistance. *See* 20 U.S.C. § 1682 (2006); Exec. Order

---

[2] Under Title IV, the United States, through the Attorney General, has the authority to file suit against public school districts. Pursuant to 42 U.S.C. § 2000h-2, the United States, through the Attorney General, may also intervene as of right in private suits alleging a denial of equal protection. This statute also entitles the United States to seek the "same relief as if it had instituted the action." 42 U.S.C. § 2000h-2; *see also* Fed. R. Civ. P. 24(a)(1).

3

No. 12,250, 45 Fed. Reg. 72,995 (1980); 28 C.F.R. § 0.51 (2011); *see also* 34 C.F.R. § 106.31 (2011) (Title IX implementing regulations).[3]

While the District denies that it violated any state or federal law, it has agreed to resolve the complaints by taking the actions laid out in the proposed Consent Decree in order to improve its schools and ensure all of its students receive an education free from harassment on the basis of sex and sexual orientation.

Both Title IV and Title IX prohibit school districts from discriminating on the basis of sex, which includes failing to adequately address and prevent sex-based harassment. Sex-based harassment includes both sexual harassment and harassment for failure to conform to gender stereotypes.[4] As the Supreme Court has made clear, nonconformity with gender stereotypes is a viable theory of sex discrimination. In *Price Waterhouse v. Hopkins*, the plurality opinion held that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), prohibits employers from "tak[ing] gender into account in making employment decisions" and "discriminat[ing] against individuals [based on] . . . sex stereotypes." 490 U.S. 228, 239, 251 (1989) (internal quotation marks

---

[3] In suits brought by private plaintiffs to enforce Title IX, the United States, through the Attorney General, may intervene to ensure the proper application and interpretation of Title IX. *See* 20 U.S.C. § 1682 (2006).

[4] Examples of harassment based on nonconformity to gender stereotypes are a male student who is harassed for wearing pink nail polish or for participating in ballet, or a female student who is harassed for having short hair or wearing traditionally male clothing.

omitted).[5]  *See also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82 (1997) (building off the *Price Waterhouse* theory to hold that Title VII also protects individuals from same-sex harassment).

Similarly, it is well-established that Title IX prohibits harassment and discrimination on the basis of gender nonconformity.  *See, e.g., Montgomery v. Independent Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1090 (D. Minn. 2000) (denying a school district's motion for summary judgment because the plaintiff had pled facts – e.g., that he was called "Jessica" because he exhibited feminine characteristics – that supported a claim of harassment based on gender nonconformity); *Pratt v. Indian River Cent. Sch. Dist.*, No. 7:09-CV-0411, 2011 WL 1204804, at *11 (N.D.N.Y. Mar. 29, 2011) (denying defendant's motion to dismiss because "harassment based on nonconformity with sex stereotypes is a legally cognizable claim under Title IX" and holding that plaintiff adequately alleged severe and pervasive harassment on that basis); *Doe v. Brimfield Grade Sch.*, 552 F. Supp. 2d 816, 823 (C.D. Ill. 2008) ("Discrimination because one's behavior does not 'conform to stereotypical ideas' of one's gender can

---

[5]  Courts rely on Title VII precedent to analyze discrimination "on the basis of sex" under Title IX.  *See, e.g., Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 74 (1992) (using Title VII precedent to recognize a Title IX private cause of action for sexual harassment); *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2nd Cir. 1995) ("[I]n a Title IX suit for gender discrimination based on sexual harassment of a student, an educational institution may be held liable under standards similar to those applied in cases under Title VII.").  In addition, the standard for sex-based harassment under Title VII enunciated in *Oncale*, 523 U.S. 75, is often cited by courts reviewing sex-based harassment claims under Title IX.  *See, e.g., Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 651 (1999); *Montgomery v. Independent Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1091 (D. Minn. 2000).

amount to actionable discrimination 'based on sex.'").  While neither statute expressly applies to harassment solely on the basis of sexual orientation, Title IV and Title IX protect all students, including lesbian, gay, bisexual and transgender students, from sexual harassment and gender nonconformity harassment.[6]  The United States' Complaint-in-Intervention focuses on two types of harassment – sexual harassment and harassment on the basis of gender nonconformity[7] – of students in the District, and the environment that has been created as a result of such harassment.

Finally, in their Complaints, the Student Plaintiffs have asserted claims under the MHRA and the Equal Protection Clause, which prohibit discrimination on the basis of sexual orientation.  Section 363A.13 of the MHRA states, in relevant part, "[i]t is an unfair discriminatory practice to discriminate in any manner in the full utilization of or benefit from any educational institution, or the services rendered thereby to any person because of . . . sexual orientation."  Similarly, courts have held that public school districts may not discriminate on the basis of sexual orientation in enforcing anti-harassment policies.  *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996) (holding that school officials were not entitled to qualified immunity on student's sexual orientation equal protection claim); *Montgomery*, 109 F. Supp. 2d at 1089 (adopting the analysis of *Nabozny* to hold

---

[6]  *See, e.g., Pratt* at *11, (N.D.N.Y. Mar. 29, 2011) (holding that a gay student's claims for gender nonconformity harassment are cognizable under Title IX and that "allegations of harassment based on sexual orientation do not defeat a sex stereotyping harassment claim").

[7]  The proposed Consent Decree categories these two types of harassment as "sex-based harassment."

that a school district's failure to protect a student from peer harassment based on sexual orientation could state an equal protection violation).

## II. The United States Conducted a Thorough Investigation and Has Negotiated the Terms of the Proposed Consent Decree to Include All Actions Necessary to Ensure the District's Compliance with Federal Laws.

On November 2, 2010, the United States received a complaint alleging that a student was being harassed by peers because the student did not act and dress in ways that conformed to traditional gender stereotypes. Pursuant to its statutory authority, the United States began a comprehensive investigation. The United States visited the District multiple times and interviewed over 60 individuals, including current and former students, parents, teachers, and District staff and administrators. The United States also requested and reviewed over 7,000 pages of documents from the District. Based upon this investigation, the United States has alleged that the District was not in compliance with Title IV and Title IX, as detailed more fully in the United States' Complaint-in-Intervention.

In June 2011, the United States began initial settlement discussions with the District to discuss equitable remedies calculated to address the findings of the United States' investigation and the United States' allegation that the District needed to take steps to be fully compliant with federal laws. In July 2011, the Student Plaintiffs filed their Complaints in this matter, and the United States joined the parties' settlement negotiations at the request of the magistrate judge. The parties met for mediation with the magistrate judge for a total of twelve days over seven months and participated in

numerous telephonic negotiation discussions in a concerted effort to come to agreement on the terms of the proposed Consent Decree.

The proposed Consent Decree provides for multiple remedies that are specifically tailored to address the environment in the District's schools and structured to ensure compliance with civil rights laws. For example, the District has agreed to retain two expert consultants to aid it in implementing the proposed Consent Decree. The consultants will assist the District in modifying its policies and procedures if necessary and appropriate; to improve its harassment training for all staff and students; to hire or appointing a Title IX Coordinator; and to develop and implement other systems to monitor harassment and support students in order to ensure long-term positive changes to the school climate. The United States will work in close partnership with the District and its consultants to monitor and enforce the terms of the proposed Consent Decree and to assist the District in its efforts in this regard.

### III.  The Proposed Consent Decree is Fair, Reasonable, Adequate, and in the Public Interest.

The proposed Consent Decree is fair to all parties, reasonable in its scope and terms, adequately addresses the issues identified in the United States' and Plaintiffs' complaints, and is in the public interest. *See Product Fabricators*, 2012 WL 264605 at *2 ("[w]hen reviewing a proposed consent decree, the trial court is to review the settlement for fairness, reasonableness, and adequacy") (citations omitted).

First, the proposed Consent Decree furthers the objectives of Title IV, Title IX, and the federal and state laws underlying the claims brought by the Student Plaintiffs.

*See id.* ("Consent decrees should … further the objectives of the law on which the complaint was based") (citing *Local Number 93*, 478 U.S. at 525). The United States is vested with responsibility to ensure that all students attend school free from harassment on the basis of sex. *See, e.g.,* OCR's *Dear Colleague Letter: Harassment and Bullying*, issued October 26, 2010, available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf (stating that "[harassment] fosters a climate of fear and disrespect that can seriously impair the physical and psychological health of its victims and create conditions that negatively affect learning, thereby undermining the ability of students to achieve their full potential."). The proposed Consent Decree will help to enable nearly 40,000 students in 37 District schools to learn in an environment free from sex-based and sexual orientation-based harassment.

Second, the remedies in the proposed Consent Decree clearly fall within the scope of the allegations in the complaints, and are reasonable and adequate, designed to remedy past harassment and promote long-term positive changes in the climate of a very large school district with a diverse population of students and staff. *See Product Fabricators,* 2012 WL 264605 at *2 (*citing Local Number 93*, 478 U.S. at 525) ("[c]onsent decrees should . . . come within the general scope of the case from the pleadings.").

The United States found that the issues raised in its complaint were not limited to a single individual or group of students, nor to a single school, and that district-wide remedies were therefore necessary. The expert consultants provided for in the proposed Consent Decree will assist the District to design and implement the remedies in the most

appropriate way for the District and its students. The parties have also determined that five years is an appropriate term for the duration of the proposed Consent Decree. It will take approximately one year to design and implement improvements to the District's policies, procedures, training, and other measures included in the terms of the proposed Consent Decree. The District will then have a full four years, corresponding to a full cycle of high school students, to implement and assess the impact of the actions taken through the proposed Consent Decree and to make any necessary modifications. Allowing for implementation to continue through a four-year cycle of high school students is important to ensure measurable and lasting improvements in school climate.

Third, the United States is charged with enforcing federal civil rights laws in public schools; its very purpose is to act in the public interest. The United States was instrumental in drafting the terms of the proposed Consent Decree and has determined that the remedies therein will ensure compliance with federal laws, address and remedy the issues identified in its complaint, and promote the public interest, including the interests of students within the District. In dedicating its limited resources to this matter, the United States determined that its actions in this case were vital to acting in the public interest. *See, e.g.*, *U.S. v. City of Miami, Fla.*, 614 F.2d 1322, 1332 (5th Cir. 1980) (holding that "[w]hen the Justice Department advocates a settlement, we need not fear that its pecuniary interests will tempt it to agree to a settlement unfair to unrepresented persons… We also note that the Justice Department must represent the interests of all citizens, white as well as black, males as well as female."); *see also E.E.O.C.* at \*2 ("[a]

consent decree must be formulated to protect federal interests") *(citing Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).

Finally, litigation is not a preferable course of action in this matter. Litigation would be lengthy and time-consuming for the parties and the Court, costly, and emotionally difficult for Student Plaintiffs, other students, and District staff who may be required to testify. By contrast, the proposed Consent Decree puts effective and appropriately tailored remedies in place immediately. As in *City of Miami*, "failure to enter the decree [in this matter] would result in the loss of 'the nation's investment in the resources consumed by the federal agencies in negotiating these decrees, as well as the chance justly to finalize a matter that otherwise would burden agencies and courts.'" 614 F.2d at 1333 (citing *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 831 (5th Cir. 1975)). The Parties have agreed to the terms of the proposed Consent Decree. It is the product of seven months of intensive negotiation, during which many different options were debated and discussed. The proposed Consent Decree balances the interests of the Parties and those of all students in the District.

During the course of the investigation and subsequent mediation, the United States and the District have maintained a good working relationship. Moreover, the United States and the District are committed to working collaboratively and cooperatively throughout the life of the proposed Consent Decree to improve the experience of District students.

In sum, the proposed Consent Decree is a victory for all Parties to this case and for all students in the District. The Parties are committed to ensuring that District students have the best possible education in a safe and welcoming environment free from harassment and agree that the proposed Consent Decree will help the District accomplish that goal.

For the reasons set forth above and in the accompanying Motion in Support of the Proposed Consent Decree and exhibits thereto, the Parties respectfully request that the Court enter the proposed Consent Decree and order its implementation.

**FOR THE UNITED STATES OF AMERICA:**

| | |
|---|---|
| B. TODD JONES<br>United States Attorney<br>District of Minnesota<br>United States Department of Justice | THOMAS E. PEREZ<br>Assistant Attorney General<br>Civil Rights Division<br>United States Department of Justice |

GREGORY G. BROOKER, #0166066
ANA H. VOSS, #0483656
Assistant United States Attorneys
United States Attorney's Office
District of Minnesota
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Tel: 612-664-5600
greg.brooker@usdoj.gov
anna.voss@usdoj.gov

ANURIMA BHARGAVA, Chief
KATHLEEN S. DEVINE, Senior Counsel
Civil Rights Division
Educational Opportunities Section

s/ Torey B. Cummings

TOREY B. CUMMINGS
(*admitted pro hac vice*)
TAMICA H. DANIEL
(*admitted pro hac vice*)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Educational Opportunities Section
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Tel: 202-305-4204
torey.cummings@usdoj.gov
tamica.daniel@usdoj.gov

OFFICE FOR CIVIL RIGHTS
OFFICE OF THE GENERAL COUNSEL
U.S. Department of Education
Of Counsel

Dated: March 5, 2012

**FOR DEFENDANT ANOKA-HENNEPIN SCHOOL DISTRICT:**

Dated: <u>March 5, 2012</u>                              GREENE ESPEL P.L.L.P.

<u>s/ Jeanette M. Bazis</u>
John M. Baker, Reg. No. 174403
Jeanette M. Bazis, Reg. No. 255646
Mark L. Johnson, Reg. No. 0345520
Kathleen K. Statler, Reg. No. 161809
Sybil L. Dunlop, Reg. No. 0390186
200 South Sixth Street, Suite 1200
Minneapolis, MN 55402
jbaker@greeneespel.com
jbazis@greeneespel.com
mjohnson@greeneespel.com
kstatler@greeneespel.com
sdunlop@greeneespel.com
(612) 373-0830

**FOR STUDENT PLAINTIFFS:**

Dated: <u>March 5, 2012</u>	FAEGRE BAKER DANIELS LLP


	s/ Michael A. Ponto
	Michael A. Ponto, #203944
	Martin S. Chester, #031514X
	Christopher H. Dolan, #0386484
	Zack L. Stephenson, #0391533
	2200 Wells Fargo Center
	90 South Seventh Street
	Minneapolis, MN 55402-3901
	(612) 766-7000
	michael.ponto@FaegreBD.com
	martin.chester@FaegreBD.com
	chris.dolan@FaegreBD.com
	zach.stephenson@FaegreBD.com

	SOUTHERN POVERTY LAW CENTER
	Mary Bauer (*admitted pro hac vice*)
	Christine P. Sun (*admitted pro hac vice*)
	Samuel Wolfe (*admitted pro hac vice*)
	400 Washington Avenue
	Montgomery, AL 36104
	mary.bauer@splcenter.org
	christine.sun@splcenter.org
	sam.wolfe@splcenter.org
	(334) 956-8200

|  |  |
|---|---|
|  | NATIONAL CENTER FOR LESBIAN RIGHTS<br>Christopher Stoll (*admitted pro hac vice*)<br>870 Market Street, Suite 370<br>San Francisco, CA 94102<br>cstoll@nclrights.org<br>(415) 365-1335 |

**FOR STUDENT PLAINTIFF E.R.**

| | |
|---|---|
| Dated:  March 5, 2012 | CULBERTH & LIENEMANN, LLP |
| | s/ Celeste E. Culberth<br>Celeste E. Culberth, #228187<br>Leslie E. Lienemann, #230194<br>1050 UBS Plaza<br>444 Cedar Street<br>St. Paul, MN  55101<br>cculberth@clslawyers.com<br>llienemann@clslawyers.com<br>(651) 290-9305 |
| | NATIONAL CENTER FOR LESBIAN RIGHTS<br>Christopher Stoll (*admitted pro hac vice*)<br>870 Market Street, Suite 370<br>San Francisco, CA 94102<br>cstoll@nclrights.org<br>(415) 365-1335 |