IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| JANE DOE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor | ) | |
| | ) | |
| v. | ) | NO. 11-cv-01999-JNE-SER |
| | ) | |
| ANOKA-HENNEPIN SCHOOL | ) | |
| DISTRICT NO. 11, et al., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| E.R., by her next friend and parent, | ) | NO. 11-cv-02282-JNE-SER |
| Quana Hollie, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANOKA-HENNEPIN SCHOOL | ) | |
| DISTRICT NO. 11, et al., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CONSENT DECREE

**WHEREAS**, student plaintiff Jane Doe and student plaintiffs K.R., D.F., B.G., D.M.-B., and E.R., by and through their next friends and parents (collectively "Student Plaintiffs"), brought two separate actions against Anoka-Hennepin School District, its School Board (together, the "District"), and several individual school administrators on or about July 21, 2011 and August 9, 2011, alleging claims of peer-on-peer harassment and discrimination on the basis of sex and sexual orientation in the District under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title IX"), and the Minnesota Human Rights Act, Minn. Stat. § 363A.13–.14 ("MHRA");

**WHEREAS**, the U.S. Department of Justice and the U.S. Department of Education, through its Office for Civil Rights, (together, the "United States"), after receiving and investigating a complaint that the District failed to adequately address peer-on-peer harassment on the basis of sex, filed a Complaint-in-Intervention in this action against the District alleging discrimination on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Title IV of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000c–2000c-9 ("Title IV"), and Title IX;

**WHEREAS**, the District denies any violation of the Equal Protection Clause, Title IV, Title IX, or any other state or federal law and denies all liability for any alleged

2

statutory or regulatory violation, by the District or any of its employees, agents, or School Board members;

**WHEREAS**, the Student Plaintiffs, the Defendants, and the United States have conferred in good faith and have negotiated the terms of this Consent Decree to fully and finally settle the Title IV and Title IX claims raised by the United States and the equal protection and federal and state law claims raised by the Student Plaintiffs; and

**WHEREAS**, after reviewing the terms of this Consent Decree, the Court finds them to be fair, just, reasonable, and consistent with federal law, and the Student Plaintiffs, the Plaintiff-Intervenor United States, and the District agree that entry of this Consent Decree, without further litigation, is in the public interest;

**ACCORDINGLY, THE COURT ORDERS, ADJUDGES, AND DECREES:**

## I.     JURISDICTION AND VENUE

A.     This Court has jurisdiction over the subject matter herein pursuant to 28 U.S.C. §§ 1331, 1343, 1345, and 2201-2202, as well as 42 U.S.C. §§ 2000c–2000c-9, 20 U.S.C. §§ 1681–1688, and 29 U.S.C. § 1367(a).

B.     Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391(b).

## II.     DEFINITIONS

A.     "Harassment" includes the use of derogatory language, intimidation, and threats; unwanted physical contact and/or physical violence, or the use of derogatory

language and images in graffiti, pictures or drawings, notes, e-mails, electronic postings and/or phone messages related to a person's membership in a protected class.

B.      "Sex-based harassment" includes both sexual harassment and gender-based harassment.

1.      "Sexual harassment" means harassment (*see supra* Section II.A. at pp. 3-4) of a sexual nature.

2.      "Gender-based harassment" means non-sexual harassment of a person because of the person's sex, including harassment based upon gender identity and expression.  Gender-based harassment includes, but is not limited to, harassment based on the person's nonconformity with gender stereotypes, regardless of the actual or perceived sex, gender identity, or sexual orientation of the harasser or target of the harassment.

C.      "Gender stereotypes" refers to stereotypical notions of masculinity and femininity or expectations of how boys or girls should act.

D.      "Sexual orientation" means having or being perceived as having an emotional, physical or sexual attachment to another person without regard to the sex of that person; or having or being perceived as having an orientation for such attachment; or having or being perceived as having a self image or identity not traditionally associated with one's biological maleness or femaleness.  Minn. Stat. § 363A.03, subd.44.

E.      "Sexual orientation-based harassment" means non-sexual harassment of a person because of the person's actual or perceived sexual orientation or association with

4

or advocacy for a person or group (e.g., family members or friends) who are lesbian, gay, bisexual or transgender ("LGBT").

F.     The primary purpose of this Consent Decree is to address sex-based and sexual orientation-based harassment.  Accordingly, for purposes of this Consent Decree, the use of the term "harassment" means sex-based harassment and sexual orientation-based harassment, as defined *supra*.

G.     A "hostile environment" exists when harassment is sufficiently severe, persistent, or pervasive to interfere with or limit one or more students' abilities to participate in or benefit from the educational program.

## III.     <u>BACKGROUND</u>

A.     Student Plaintiffs are six current or former students of the District who filed complaints seeking injunctive and declaratory relief, nominal, compensatory, and punitive damages, and attorneys' fees, expenses, and costs.

B.     For purposes of this Consent Decree, "United States" refers to the United States Department of Justice ("DOJ") and the United States Department of Education, through its Office for Civil Rights ("OCR").

1.     DOJ is the federal agency responsible for pursuing enforcement proceedings in federal courts for violations, or suspected violations, of Title IV.  *See* Title IV.  DOJ also enforces Title IX in federal courts either by intervention or as amicus curiae in private lawsuits, or upon referral from OCR.  *See* 20 U.S.C. § 1682; Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (1980); 28 C.F.R. § 0.51 (1998).

2.      OCR is the office within the Department of Education responsible for administratively enforcing Title IX, which prohibits discrimination on the basis of sex in any educational program or activity receiving federal financial assistance.  *See* Title IX.

C.      The District administers a system of one or more public schools and is responsible for the assignment of students to or within such system; therefore the District is subject to Title IV.  The District is a recipient of federal financial assistance and is therefore also subject to Title IX and its implementing regulations, 34 C.F.R. § 106.31. The District is an educational institution and therefore subject to the MHRA.

D.      Following its investigation of the complaint it received, the United States began settlement discussions with the District prior to the commencement of the Student Plaintiffs' lawsuit.  After Student Plaintiffs filed their lawsuit and pursuant to the Court's request, the United States joined the settlement negotiations of the Student Plaintiffs and the District in an attempt to resolve the complaints and avoid protracted litigation.  These negotiations resulted in the agreement of the parties as set forth in this Consent Decree.

## IV.    <u>GENERAL REQUIREMENTS</u>

A.      The District shall take action, in accordance with the requirements of Title IV and Title IX, their implementing regulations, and OCR Guidance, to eliminate and prevent future instances of harassment in its education programs and activities.  To accomplish this, the District agrees to make all necessary and appropriate revisions to its harassment policies; appropriately and immediately respond to and stop all conduct that

6

may constitute harassment; ensure it fully investigates reported conduct that may constitute harassment; escalate remedial efforts by instituting additional measures when students are harassed on a repeated basis; and mitigate the effects of harassment that occurs.  The District shall also take proactive measures to address issues in the school climate that have arisen from or may arise from and/or contribute to a hostile environment.

B.      No later than April 9, 2012, the District shall retain the Great Lakes Equity Center, an Equity Assistance Center based at Indiana University-Purdue University Indianapolis, or another qualified third-party consultant mutually agreed upon by the District and the United States, to consult with the District to study and determine what additional measures the District needs to take to effectively address, prevent, and respond to harassment at District schools and comply with the terms of this Consent Decree.  The entity or individual retained shall be called the "Equity Consultant" throughout this Consent Decree.  The District will be responsible for any costs associated with the retention of the Equity Consultant.  The District shall give the Equity Consultant access to any and all data, documents, or information the Consultant deems necessary to fulfill his or her duties under this Consent Decree.[1]

C.      This Consent Decree shall remain in force for five (5) years from the date it is entered by the Court.

---

[1]      The Equity Consultant's access to personally identifiable information shall be in accordance with the regulations of the Federal Educational Rights and Privacy Act, 34 C.F.R. § 99.31(a)(1).

## V.  SPECIFIC REQUIREMENTS

A.   Revisions to District Policies and Procedures

1.   The District shall engage the Equity Consultant to review and recommend revisions as necessary to all of the District's policies and procedures related to the issues identified in this Consent Decree, including, but not limited to, any policy that impacts harassment, to ensure that they specifically and appropriately address harassment pursuant to the Equal Protection Clause, Title IV, Title IX, and the MHRA.

2.   For purposes of this Consent Decree, the policies and procedures encompassed by the preceding paragraph that the Equity Consultant shall review are referred to as "relevant policies and procedures" and shall include, but not be limited to: *Bullying Prohibition Policy* (Board Policy 514.0); *Equal Educational Opportunity Policy* (Board Policy 102.0); *Harassment, Violence and Discrimination Policy* (Board Policy 413.0) ("HVD Policy"); *Harassment, Violence and Discrimination Reporting Form*; and *Language of Harassment* procedures, attached as Exhibits A, B, C, D, and E, respectively.

3.   In addition to the recommendations of the Equity Consultant, revisions to the District's relevant policies and procedures shall also include:

a.   Adding all of the terms and definitions set forth in Section II of this Consent Decree, specifying that all harassment, including that based on nonconformity to gender stereotypes and/or gender identity and expression, is prohibited in the District;

8

b.  Written guidance providing examples of the types of harassment prohibited by the District's policies;

c.  A requirement that District personnel investigate, address, and respond appropriately to every harassment incident, in accordance with the requirements of Title IV and Title IX, their implementing regulations, and OCR Guidance, whether reported (verbally or in writing) by the harassed student, a witness, a parent, or any other individual; observed by any District employee; or brought to the District's attention by any other means;

d.  Adding the contact information, including the physical address, phone number and email address, for the District's Title IX Coordinator and Equity Coordinator (*see infra* Sections V.B. and V.C. at pp. 16, 21);

e.  A protocol for (i) when an incident or series of incidents of harassment of a particular student or group of students rises to a level of severity or persistence requiring District staff to notify the parent(s)/guardian(s) of the harassed student(s), ensuring that the individual notifying parents/guardians of the harassment is sensitive to any personal concerns of the student in discussing the basis/bases of the harassment with the harassed student's parent/guardian, and (ii) when an incident or series of incidents of harassment by a particular student or group of students rises to a level of severity or persistence requiring District staff to notify the parent/guardian of the harassing student(s);

9

f.      A requirement that the District's procedures involve tracking electronically all harassment incidents (including any written or verbal report, discipline referral, or complaint involving possible sex-based or sexual orientation-based harassment ("harassment incidents" ) and that the tracking includes: relevant information related to the student harassed; the person reporting the harassment (if different than the student harassed); the alleged harasser; all known witnesses to the alleged incident(s); specific details on the date(s), time(s), nature, content, and location(s) of the harassment incident(s); the date the complaint or other report was made; the date the alleged harasser was interviewed; a brief summary of the investigating officials' findings and the basis for those findings (consistent with the District's current practice and subject to any recommendations of the Equity Consultant); and the District's response to the incident; except that for incidents involving no identified student target(s), the District will develop a district-wide system for tracking the frequency of each incident, including, for example, taking a photo or otherwise recording the date and location of the incident in a matter that can then be sent for tracking and investigation purposes to the Title IX Coordinator and/or Equity Coordinator, as appropriate;

g.      In order for the District to identify, address, and eliminate harassment, a requirement that, at a minimum, the District tracks all incidents of harassment that are directed at a particular student or students as well as written or graphic statements (e.g., graffiti) located or distributed before, during or after school hours on all school property, including the school bus, at school functions, or at school-

sponsored events held at other locations; and any off campus conduct that has a continuing effect on campus.

        i.     At the end of the 2012-2013 school year, the District and the Equity Consultant shall confer with the United States concerning whether the District should track additional types of incidents in the 2013-2014 school year and beyond.

        ii.    The    District    shall    consider    additional recommendations of the Equity Consultant, if any.

        iii.    The District, the Equity Consultant, and the United States will work together in good faith to resolve any disagreements.  If the District and the United States are unable to resolve any disagreements in a reasonable period of time, either party may request that the Court mediate the dispute.

        h.    A requirement that any supporting written documentation related to any harassment incident be maintained for the duration of this Consent Decree, including but not limited to: any written report or complaint; interview notes; any written statements of the student(s) harassed and/or person(s) reporting the harassment; any records of correspondence with the parent(s) or guardian(s) of the student(s) harassed and the alleged harasser(s) or his or her parents or guardian(s) regarding the incident; and existing documentation of any prior incidents of discrimination or harassment involving the student(s) subject to harassment or the alleged harasser(s).

        4.    Procedures and Timeline for Revision and Implementation

a.     No later than April 23, 2012, the Equity Consultant shall communicate to the District and to the United States his or her: (1) findings or conclusions regarding areas needing editing, clarification, or improvement in the relevant policies and procedures, and (2) recommendations for revisions to the relevant policies and procedures.

b.     No later than May 15, 2012, the District shall submit to the United States for review and approval its proposed revisions to its relevant policies and procedures incorporating all of the Equity Consultant's recommendations, or proposing alternative revisions and explaining how the District's proposed alternative revisions are less burdensome, more feasible, or more appropriate and still address or remedy the Equity Consultant's findings and conclusions.

c.     Under the terms of this Consent Decree, the United States has authority to review and approve the District's proposed revisions for compliance with Title IV and Title IX, their implementing regulations, OCR Guidance, this Consent Decree, and the underlying reasons for this Consent Decree.  Such approval will not be unreasonably withheld, and the United States shall complete such review within thirty (30) calendar days of receipt of the proposed revisions.  If, however, the District and the United States initially disagree regarding the proposed revisions, the District, the Equity Consultant, and the United States will work together in good faith to resolve any disagreements.  If the District and the United States are unable to resolve any

disagreements in a reasonable period of time, either party may request that the Court mediate the dispute.

           d.     After the United States approves the proposed revised policies and procedures, the Board will review the proposed revised policies and procedures at its next scheduled meeting.

           i.     If the Board receives the United States' approval of the revised policies and procedures six (6) or more calendar days before its next scheduled meeting, it shall conduct a vote on whether to adopt the revisions within two (2) public meetings. If the Board receives the United States' approval of the revised policies and procedures within five (5) calendar days of its next scheduled meeting, it shall conduct a vote on the revisions within three (3) public meetings.

           ii.     If the Board modifies or rejects the proposed revised policies and procedures, the District shall resubmit a new proposal for revisions to the relevant policies and procedures to the United States.

           iii.     Under the terms of this Consent Decree, the United States has authority to review and approve the District's proposed revisions to its relevant policies and procedures for compliance with Title IV and Title IX, their implementing regulations, OCR Guidance, this Consent Decree, and the underlying reasons for this Consent Decree. Such approval will not be unreasonably withheld, and the United States shall complete such review within thirty (30) calendar days of receipt of the proposed revisions. The District, the Equity Consultant, and the United States will work together

13

in good faith to resolve any disagreements.  If the District and the United States are unable to resolve any disagreements in a reasonable period of time, either party may request that this Court mediate the dispute.

e.      The District will continue to distribute annually its student and employee handbooks, and such handbooks shall contain the revised relevant policies and procedures printed in full along with the title and contact information of the school-level and District-level individuals responsible for receiving and/or responding to harassment complaints, including the names and contact information for the Title IX Coordinator and Equity Coordinator.   If the District has not yet identified or hired the school-level and District-level individuals responsible for receiving and/or responding to harassment complaints, Title IX Coordinator, or Equity Coordinator at the time it prints the annual student and employee handbooks, the handbooks shall provide full contact information, including an email address that the later-identified employee will access (*e.g.*, titleix@anoka.k12.mn.us for the Title IX Coordinator).

f.      The District's website shall contain the revised relevant policies and procedures in full; the name and contact information of the school-level and District-level individuals responsible for receiving harassment complaints, including the Title IX Coordinator and Equity Coordinator; and a statement encouraging students to report incidents of harassment immediately.

g.      The District shall make available a hyperlink to the revised *Harassment, Violence and Discrimination Reporting Form* (Exhibit E) on the District's

website in a form-fillable PDF allowing direct electronic submission of the completed document to school and/or District officials, available in the languages represented in the District, and the District shall publicize the availability of this online form to all its students and their parents or guardians.

h.     When the District revises any of the relevant policies or procedures during a school year pursuant to Section V.A.1-4 at pp. 8-15 of this Consent Decree, it shall disseminate notice of the revised policies and procedures to its students, parents and guardians, and employees and ensure all students, parents and guardians, and employees are able to access a full copy of the revised policies and procedures (e.g., by announcement on the District's website, email distribution to parents/guardians and employees, distribution of a written notice to students to take home with information on where hard copies of the revised policies are available, posting on school bulletin boards, etc.) not to exceed thirty (30) days after board approval.

i.     The District will work with the Equity Consultant to determine appropriate ways to explain and address questions or concerns regarding the revised policies and procedures from students, parents and guardians, and employees.

5.     Once the District revises its relevant policies and procedures pursuant to the terms above, the District will not modify those policies and procedures, rescind any of the policies or procedures, or adopt any new policies or procedures that relate to, are relevant to, or affect harassment during the period of the Consent Decree without following the process set forth in Sections V.A.4.b-d. at pp. 12-15.

15

B.    Title IX Coordinator

1.    Under 34 C.F.R. § 106.8(a), the District, as a recipient of federal funding, is required to "designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities" under Title IX, "including any investigation of any complaint communicated to such recipient" alleging noncompliance or actions that would violate Title IX.  The District must also "notify all its students and employees of the name, office address, and telephone number" of the Title IX Coordinator.

2.    The District will hire or appoint a qualified person knowledgeable in all aspects of Title IX law (as applied to school districts) with experience conducting training on harassment or related civil rights issues and in carrying out the duties and responsibilities enumerated in Sections V.B.3 *infra* at pp. 17-18, to serve as Title IX Coordinator.  This individual is vested with responsibility from the District to ensure proper implementation of the District's sex-based harassment policies and procedures.

a.    If the District has already engaged its Equity Consultant, the Equity Consultant shall assist the District in hiring or appointing the Title IX Coordinator.

b.    Prior to making an offer of employment or an appointment of a Title IX Coordinator, no later than April 30, 2012, the District shall submit the name and resume or curriculum vitae of the individual it would like to hire or appoint as the Title IX Coordinator to the United States. Under the terms of this Consent Decree, the

16

United States has authority to review and approve the hiring or appointment of the individual the District selects for Title IX Coordinator for compliance with Title IV and Title IX, their implementing regulations, OCR Guidance, this Consent Decree, and the underlying reasons for this Consent Decree.  Such approval shall not be unreasonably withheld.

      i.     No later than five (5) school days after the Court enters this Consent Decree, the District shall appoint an Interim Title IX Coordinator.

      ii.     The Interim Title IX Coordinator shall be responsible for the duties referenced in Section V.B.1 at p. 16 until the start date of the District's permanent Title IX Coordinator.

      c.     Should the Title IX Coordinator, once hired or appointed, leave that position during the term of this Consent Decree, the District shall immediately notify the United States and shall work with the Equity Consultant to hire or appoint a replacement pursuant to the terms in Section V.B.2. at pp. 16-17.

      3.     The Title IX Coordinator's duties shall include:

      a.     Ensuring the District complies with and carries out the requirements of and its obligations under Title IX;

      b.     Implementing District policies and procedures related to sex-based harassment and ensuring administrators, staff and students comply with those policies and procedures;

c.      Monitoring all complaints of sex-based discrimination and harassment pursuant to Section V.B.4., *infra* at pp. 18-20;

d.      Identifying trends or common areas of concern related to Title IX compliance and assisting schools in addressing such issues;

e.      Coordinating between and among school and District staff, students, and parents regarding Title IX issues including, but not limited to, issues related to sex-based harassment;

f.      Training District employees and students regarding sex-based discrimination and harassment, and District policies and procedures pursuant to Section V.D., *infra* at pp. 22-29; and

g.      Consulting with security personnel and administrative staff following any physical incidents of sex-based harassment or assault.

4.      The District and its Title IX Coordinator will establish a system for District review of school-level investigations and resolutions of student conduct that may constitute sex-based harassment in order to ensure both compliance with the District's HVD Policy and that the District properly identifies all sex-based harassment as a means to assess the effectiveness of its efforts in preventing and eliminating harassment. The Equity Consultant will assist in the development and implementation of those procedures. That system will require, at minimum, that:

a.      The Title IX Coordinator review all school-level harassment incident reports to ensure that all alleged incidents that involved possible sex-based

harassment were properly identified as such and responded to appropriately, in accordance with the requirements of Title IV and Title IX, their implementing regulations, and OCR Guidance. The Title IX Coordinator will follow up with any particular schools or personnel who could improve their identification of or response to sex-based harassment to address the mistake(s);

b.      For each harassment incident involving possible sex-based harassment, including but not limited to situations that result in assaults, the Title IX Coordinator will evaluate, within ten (10) school days of receiving the report, referral, or complaint of the harassment incident:

i.      The investigating official's findings and the basis for those findings in supporting documentation; and

ii.     Whether the school or District's response complied with the HVD Policy and Title IX.

c.      For each instance of sex-based harassment for which the Title IX Coordinator determines that a school's response could be improved pursuant to the policies and procedures established in the HVD Policy or Title IX, the Title IX Coordinator will:

i.      Promptly identify all areas where the school's response could be improved pursuant to the HVD Policy or Title IX;

ii.     Promptly inform the Designated Person at that school who has been designated pursuant to Section V.D.4 at p. 26 below and the employee(s)

who responded to the complaint of the manner in which the response could be improved under the HVD Policy or Title IX, and provide guidance and support necessary to ensure that a proper response is provided in the future, including, but not limited to, additional training and professional development;

     iii. Initiate timely steps to remedy the non-compliance with regard to the particular complaint; and

     iv. Within seven (7) school days of completing the investigation, contact the parents of both the student(s) subject to the harassment and the offending student(s) to inform them of the Title IX Coordinator's review of the complaint, being sensitive to any personal concerns of the student related to the basis for the harassment, provide the parents a copy of the HVD Policy, as well as the timeline for any additional processing and/or resolution of the underlying complaint.  That timeline shall not exceed fourteen (14) school days from the date of parental contact without good cause.

    d. The Title IX Coordinator shall submit for the United States' approval written copies of the system developed pursuant to Section V.B.4 at pp. 18-20 by August 1, 2012.  Under the terms of this Consent Decree, the United States has authority to review and approve the District's proposed system for review of school-level investigations and resolutions of student conduct that may constitute sex-based harassment for compliance with Title IV and Title IX, their implementing regulations, OCR Guidance, this Consent Decree, and the underlying reasons for this Consent Decree.

Such approval will not be unreasonably withheld, and the United States shall complete such review within thirty (30) calendar days of receipt of the proposed system. If, however, the District and the United States initially disagree regarding the proposed system, the District, the Equity Consultant, and the United States will work together in good faith to resolve any disagreements. If the District and the United States are unable to resolve any disagreements in a reasonable period of time, either party may request that the Court mediate the dispute.

C.   Equity Coordinator

1.   The District shall hire or appoint a qualified person knowledgeable in all aspects of the MHRA and in sexual orientation-based harassment, as applied to school districts, to serve as the Equity Coordinator. This individual will ensure proper implementation of the District's sexual orientation-based harassment policies and procedures.

2.   If the District has already engaged its Equity Consultant, the Equity Consultant shall assist the District in hiring or appointing the Equity Coordinator.

3.   The Equity Coordinator shall have the same duties and responsibilities as the Title IX Coordinator under Sections V.B.3-4 at pp. 17-21, except that the Equity Coordinator shall focus on sexual orientation-based harassment instead of sex-based harassment.

4.      Additionally, the Equity Coordinator or other qualified individual shall supervise, offer resources to, and act as a District liaison to Gay-Straight Alliance groups (GSAs) in the District, and his or her duties in this regard shall include:

a.      Organizing regular meetings of GSA facilitators;

b.      Providing resources and support to gender nonconforming students, to students of diverse sexual orientations, and to students whose family members have diverse sexual orientations;

c.      Providing resources (consistent with the level of resources provided to other non-curricular student groups under the Equal Access Act) on gender identity, gender nonconformity, and sexual orientation for District teachers, staff, administrators, and GSA facilitators; and

d.      Collaborating with external agencies and organizations for support and assistance.

5.      The District may elect to have the same individual act as both the Title IX Coordinator and the Equity Coordinator.

D.      Training and Professional Development

1.      The District will work with the Equity Consultant, the Title IX Coordinator, and the Equity Coordinator to review and recommend additions and improvements to the trainings on harassment, consistent with best practices, for all students and employees who interact with students in the District.  All such trainings

shall be mandatory and the District will ensure that any student or employee who misses a scheduled training receives the training in a timely manner.

      2.     The District provides, and shall continue to provide, age-appropriate instruction to all of its students on harassment on an annual basis and on a make-up basis for students who miss the annually scheduled training.  By September 1, 2012, the Equity Consultant shall review and recommend improvements to the content of the District's training program for students.  The Equity Consultant's recommendations for student training content shall include, but are not limited to:

      a.     The importance of, sensitivity to, and respect for the diversity of the student body, specifically addressing harassment, including but not limited to issues related to sex and gender, including nonconformity with gender stereotypes.

      b.     For students in grades 6-12:

      i.     Instruction on the types of conduct that constitute harassment, including the use of multiple examples of the different types of behaviors that can constitute harassment;

      ii.     Instruction on the negative impact that such harassment has on students and on the educational environment;

      iii.     Information regarding how students are expected to respond to harassment they experience or witness, or of which they otherwise know or become aware, including the reporting avenues available;

iv.    Information regarding how teachers, administrators, and staff are expected to respond to harassment they witness or to incidents that are reported to them;

v.    A discussion of potential consequences for students who harass their peers, including a statement that the District and every school in the District will not tolerate harassment and will address all such incidents;

vi.    An introduction of the Title IX Coordinator and an explanation of his/her role; and

vii.    An introduction of the Equity Coordinator and an explanation of his/her role.

c.    For students in grades K-5, instruction designed to promote an inclusive and safe educational environment for all students, including issues related to the prevention of bullying and violence.

3.    The District provides, and will continue to provide, training to all of its teachers and administrators on harassment on an annual basis, and on a make-up basis for those employees who miss the annually scheduled training.  By July 1, 2012, the Equity Consultant shall review and recommend improvements to the content of the District's staff training program.  The District shall ensure all staff who interact with students receive mandatory annual training.  The Equity Consultant's recommendations for training content shall include, but are not limited to:

a.     In-depth instruction on the type of conduct that constitutes harassment, specifically addressing examples of sex-based and sexual orientation-based harassment, and a discussion about the negative impact that such harassment has on students, employees, and the educational environment;

b.     In-depth discussion on the importance of, sensitivity to, and respect for the diversity of the student body. Such discussions will include the following topics: gender identity, gender expression, level of conformity to gender stereotypes, and sexual orientation;

c.     A facilitated discussion on the root causes of harassment and the harms resulting from such conduct;

d.     Specific guidance and discussions of steps to foster a nondiscriminatory educational environment for all students, specifically students who do not conform to gender stereotypes and/or who are or might be perceived to be lesbian, gay, bisexual, or transgender;

e.     A review of the revised harassment policies and procedures with emphasis on the District's and its employees' responsibility to respond to all harassment, and to take effective action to end harassment, prevent its recurrence, and as appropriate, remedy its effects;

f.     An introduction of the Title IX Coordinator and an explanation of his/her role;

g.      An introduction of the Equity Coordinator and an explanation of his/her role;

h.      Identification of designated staff at each school who are available to answer questions or address concerns regarding the harassment policies and procedures or other issues related to harassment (*see infra* Section V.D.4 at p. 26);

i.      Clarification that failure by school officials to respond in a timely, reasonable, effective, and appropriate manner, in accordance with the requirements of Title IV and Title IX, their implementing regulations, and OCR Guidance, to harassment of which they knew or should have known violates District policy as well as federal and/or state laws;

j.      Clarification that in countering harassment, staff should inform harassers that the District is accepting of all students, regardless of gender nonconformity or sexual orientation, and that comments to the contrary are inappropriate and harmful;

k.      Clarification that statements of staff that expressly affirm the dignity and self-worth of students and any protected characteristic of such students are consistent with District policies, subject to the Equity Consultant's recommendations.

4.      The District has designated at least one administrator or staff member ("Designated Person") at each middle and high school who will be responsible for overseeing reports and investigations of harassment and answering staff and student questions regarding the harassment policies and procedures in his or her school.

26

a.      By the first day of school each year, the District shall provide the name and contact information of the Designated Person for each school on its website and on a prominent bulletin board in each school's main office.  If the Designated Person is identified at the time the annual student and employee handbooks are printed, the District shall also include the name of the Designated Person in the handbooks.  If the Designated Person has not yet been identified when the handbooks are printed, the District shall include in the handbooks the full contact information for each Designated Person, including an email address (*e.g.*, DPblainehs@anoka.k12.mn.us).

b.      Each middle and high school in the District shall also identify and introduce its Designated Person to all students during student orientation at the beginning of each school year.

5.      By the first day of school each year, and then at least annually thereafter for the term of this Consent Decree, the District, with the Equity Consultant, the Title IX Coordinator, and the Equity Coordinator, will provide additional mandatory training(s) on harassment to every Designated Person.  The training shall include, but is not limited to:

a.      In-depth instruction on talking with students who have been subject to harassment, including specific guidance on talking with students struggling with sexual orientation and/or gender identity or expression issues who may have concerns about unsupportive environments; and

b.       Instruction on talking with students who repeatedly harass their peers on the basis of sex and/or sexual orientation, including examples of age-appropriate interventions for these students.

6.       The District, with the Equity Consultant, may develop a train-the-trainer model for some or all of the required trainings in Section V.D.1-5, *supra* at pp. 22-28.  If the District uses a train-the-trainer model, it shall ensure that all individuals leading trainings are sufficiently trained to do so.  If, and only if, the Equity Consultant and the District cannot agree on the details and procedures of a train-the-trainer model program, the District shall propose its model to the United States.  The United States may reject proposed train-the-trainer models that are not consistent with the terms and spirit of this Consent Decree and/or applicable civil rights laws.

7.       The District shall work with the Equity Consultant to determine an appropriate format for each annual and make-up training included in Section V.D.1-6 at pp. 22-28.  The District and the Equity Consultant shall ensure that the group sizes and potential inclusion of discussions, role-plays, and/or time for questions and answers conform to best practices in the field, as determined by the Equity Consultant.

8.       The District is responsible for assuming any and all costs associated with the required trainings referenced in Section V.D.1-7 at pp. 22-28.

9.       Under the terms of this Consent Decree, the United States has authority to review and approve the District's design and content of the student and employee trainings incorporating all of the requirements in Section V.D.1-7 at pp. 22-28

for compliance with Title IV and Title IX, their implementing regulations, OCR Guidance, this Consent Decree, and the underlying reasons for this Consent Decree. The review and approval process shall encompass the following:

      a.    The District and the Equity Consultant shall work together to submit a written proposal to the United States for its student trainings incorporating all of the requirements in Section V.D.1-7 at pp. 22-28 and including any additional recommendations by the Equity Consultant, to the extent permitted by law, by September 30, 2012. The District and the Equity Consultant shall work together to submit a written proposal to the United States for its employee trainings incorporating all of the requirements in Section V.D.1-7 at pp. 22-28 and including any additional recommendations by the Equity Consultant, to the extent permitted by law, by July 27, 2012.

      b.    The proposal shall include detailed descriptions of the content of the trainings, the intended audience, the size of the audience, the schedule and length of the trainings, and the identity of the individual(s) providing the training.

      c.    The United States shall have thirty (30) calendar days from the day of receipt of the proposed trainings to review and approve the District's proposed trainings for compliance with Title IV and Title IX, their implementing regulations, OCR Guidance, this Consent Decree, and the underlying reasons for this Consent Decree. If, however, the District, the United States, and/or the Equity Consultant initially disagree regarding the proposed training design and/or content, the District, the Equity Consultant,

and the United States will work together in good faith to resolve any disagreements.  If the District and the United States are unable to resolve any disagreements in a reasonable period of time, either party may request that the Court mediate the dispute.

      E.    <u>Mental Health Needs of Students</u>

      1.    The District agrees that a counselor or other professional qualified to assist students with mental health concerns will always be available during school hours to assist students who have mental health concerns.

      2.    By September 4, 2012, the District agrees to hire or appoint a qualified individual who holds a Masters degree or a PhD in a mental health field, a current licensure, and has previous experience as a clinician, to act as a consultant ("Mental Health Consultant").  The Mental Health Consultant will review and assess current practices in the District with regard to assisting middle and high school students who are targets of harassment, including students who may be at risk for mental health problems that include, but are not limited to depression, anxiety, cutting and other self-injurious behaviors, and/or suicidal ideation or suicide attempts.

      3.    By December 31, 2012, the Mental Health Consultant will prepare a report (the "Mental Health Report") recommending action steps for the District to effectively address, assist, and respond to middle and high school students who are targets of harassment, including students who may be at risk for mental health problems that include, but are not limited to depression, anxiety, cutting and other self-injurious behaviors, and/or suicidal ideation or suicide attempts.

4.     At a minimum, the Mental Health Report shall include the following:

a.     Assessment of the mental health needs of middle and high school students in the District who were targets of harassment;

b.     Recommendations for ways in which the District can better meet the mental health needs of such middle and high school students;

c.     A review of the District's procedures for identifying risk factors for such middle and high school students struggling with serious mental health issues and recommendations for improvements, if necessary;

d.     A review of the District's procedures for intervention with such middle and high school students at risk for depression, anxiety, cutting and other self-injurious behaviors, and suicide, consistent with its obligations under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1482, Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a, and recommendations for improvements, if necessary;

e.     A review of the District's procedures for tracking such middle and high school students at risk for depression, anxiety, cutting and other self-injurious behaviors, and suicide, and recommendations for improvements, if necessary;

f.     A review of the District's policies and procedures for handling suicidal ideation, suicide attempts, and other mental health crises among students in the District and recommendations for improvements, if necessary; and

g.     A review of the District's training(s) for middle and high school administrators, counselors, psychologists, and any other District mental health professionals related to any of the recommendations contained in the Mental Health Report, and recommendations for improvements, if necessary.

5.     The District, after hiring or appointing its Mental Health Consultant, shall provide the Mental Health Consultant with all information he or she believes is necessary to prepare the Mental Health Report pursuant to the requirements set forth in Sections V.E.3-4, *supra* at pp. 30-31.[2]

6.     Within seven (7) calendar days of its receipt, the District shall provide the United States with a copy of the Mental Health Report.

7.     By January 31, 2013, the District shall submit to the United States for its review and approval a plan detailing how the District intends to address the recommendations contained in the Mental Health Report for the 2012-2013 school year and subsequent school years.  Under the terms of this Consent Decree, the United States has authority to review and approve the District's plan for addressing the Mental Health Report recommendations for its compliance with Title IV and Title IX, their implementing regulations, OCR Guidance, this Consent Decree, and the underlying reasons for this Consent Decree. Such approval will not be unreasonably withheld, and the United States shall complete such review within thirty (30) calendar days of receipt of

_____

[2]     The Mental Health Consultant's access to personally identifiable information shall be in accordance with the regulations of the Federal Educational Rights and Privacy Act, 34 C.F.R. § 99.31(a)(1).

the District's plan.  If, however, the District and the United States initially disagree regarding the proposed plan, the District and the United States will work together in good faith to resolve any disagreements.  If the District and the United States are unable to resolve any disagreements in a reasonable period of time, either party may request that the Court mediate the dispute.

      F.     <u>Anti-Bullying Survey</u>

      1.     The District will continue to administer an Anti-Bullying Survey ("Survey") and will do so once per school year.  The District shall ensure that the Survey includes questions regarding the "hot-spots" (*see infra* Section H at pp. 36-37) within each school where harassment is occurring.

      2.     In consultation with the Equity Consultant, the District shall review the Survey to ascertain its effectiveness in assessing the presence and impact of harassment at each middle and high school in the District.  By October 16, 2012, the Equity Consultant shall make recommendations to enhance the Survey's effectiveness.

      3.     In making his or her recommendations regarding the Survey, the Equity Consultant shall consider (i) the number and adequacy of the questions related to harassment; and (ii) the appropriate survey participants.

      4.     The District shall implement the Equity Consultant's recommendations in revising the content and participants of the Survey, unless the District disagrees with the recommendations.  If the District disagrees with the Equity Consultant's recommendations regarding the Survey, the District shall submit to the

United States an alternative proposal regarding the Survey, detailing the Equity Consultant's recommendations and explaining why the District disagrees with them. Under the terms of this Consent Decree, the United States has authority to review and approve the District's alternative Survey proposal for compliance with Title IV and Title IX, their implementing regulations, OCR Guidance, this Consent Decree, and the underlying reasons for this Consent Decree. Such approval will not be unreasonably withheld, and the United States shall complete such review within thirty (30) calendar days of receipt of the District's plan. If the District and the United States are unable to resolve any disagreements in a reasonable period of time, either party may request that the Court mediate the dispute.

6.     With assistance from the Equity Consultant, the District will analyze the results of the Survey in writing. The analysis will include any climate issues identified through the Surveys and recommendations to address harassment as needed. Within 30 days of when the District receives the survey results, the District will produce a copy of the Survey analysis and recommendations to the United States.

7.     The Equity Consultant will train the District administrators on how to properly interpret the results of its Survey and respond to the findings (e.g., modify policies or procedures as necessary, according to the terms of this Consent Decree).

G.   Anti-Bullying/Anti-Harassment Task Force

1.   The District has formed an Anti-Bullying/Anti-Harassment Task Force ("Task Force") to advise the District regarding how best to foster a positive educational climate free of harassment.

2.   The District shall work with the Equity Consultant to assess and expand the composition, mission, and functions the Task Force pursuant to the guidelines outlined herein by July 31, 2012. At a minimum, members of the Task Force shall include, but are not limited to: the Title IX Coordinator, the Equity Coordinator, students (including at least two Gay-Straight Alliance ("GSA") members, so long as there are two GSA members who wish to participate), parents of students in the District (including at least two parents of GSA members, so long as there are two GSA parents who wish to participate), teachers or school counselors, and school administrators. The Equity Consultant shall ensure that parents and students have meaningful representation on the Task Force.

3.   The Title IX Coordinator, or his or her designee, shall coordinate and schedule the Task Force's meetings and work.

4.   The Task Force shall meet at least twice per school year and maintain documentation of the date and duration of each meeting as well as meeting minutes.

5.   At least once per school year, and more often if the Task Force deems it appropriate, the Title IX Coordinator or his/her designee will prepare a written

35

report ("Task Force Report") summarizing the Task Force's recommendations and suggestions.  Each annual Task Force Report shall be completed no later than June 30 of each year that the Consent Decree is in effect.  The Task Force Report shall include, but not be limited to:

        a.      Concerns of students and parents related to harassment incidents and the District's overall climate;

        b.      Recommendations for strategies to prevent harassment and improve the climate;

        c.      Outreach strategies to parents and families to build awareness around, address concerns related to, and gain feedback regarding the District's anti-harassment efforts.

        6.      Within seven (7) calendar days of receiving the Task Force Report, the District shall provide the Equity Consultant and the United States with copies of the Report.  The District shall carefully consider the findings and recommendations of the Task Force.

        H.      <u>Harassment Hot-Spots</u>

        1.      In consultation with the Equity Consultant in 2012-2013 and on its own for the remainder of the term of the Consent Decree, at least once each trimester during the school year, the District will identify "hot-spots" in its middle and high schools where harassment is most often occurring, including outdoor locations on each

36

school property where students congregate (e.g., parking lots) and on school buses. The District shall seek and consider student input in identifying hot-spots.

2.      Based on a review of the data and the recommendations of the Equity Consultant, the District will work in good faith with the Equity Consultant to agree on appropriate corrective actions by the District to eliminate harassment in the identified hot-spots. The corrective actions may include, but are not limited to, training students to assist in monitoring hot-spots, assigning staff to monitor hot-spots, and/or adding additional cameras in certain school locations or on buses and monitoring those cameras. The District will implement the agreed actions and promptly notify the United States of its actions no later than fourteen (14) school days after the last day of each trimester.

3.      The District shall ensure that any person designated to monitor a harassment hot-spot has attended trainings on the District's harassment policies and procedures. The District will ensure that those employees who begin employment after such annual training has occurred will work with the Title IX Coordinator and Equity Coordinator to ensure each new employee receives training on the District's harassment policies and procedures.

4.      The parties acknowledge that the school bus drivers who work in the District are not District employees, but rather are the employees of vendors with whom the District contracts. The District will work with its school bus vendors to ensure that school bus drivers receive annual training on the District's harassment policies and

procedures, and to ensure that the bus vendors have processes in place to provide each new bus driver with training on the District's harassment policies and procedures.

I.    Peer Leadership

1.    The District shall ensure that all of its middle and high schools have a peer leadership program addressing harassment by the beginning of the second trimester of the 2012-2013 school year.[3]   The District may tailor its peer leadership programs to the specific needs of each individual middle and high school, so long as every program has an anti-harassment component.  The Equity Consultant may assist the District in setting up or improving its peer leadership programs and in tailoring the programs to each school building.

2.    The District will work with the Equity Consultant to review the need for additional training on responding to or preventing harassment for students in the peer leadership programs.

J.    Student Meetings

1.    The Superintendent or an Associate Superintendent of the District shall continue the District's practice of convening annual meetings with students at every middle school and high school, including alternative schools, in the District.  Each school administration shall select 15-20 students to attend the Superintendent meeting, making

---

[3]    *See, e.g.*, Roosevelt Middle School's peer leadership program, in which student leaders are identified in each grade level to establish a student-led anti-bullying group that leads team-building, anti-bullying activities during advisory periods, stands up against bullying when they see it, assists targeted students who are struggling with bullying, and makes videos, posters, and other displays to raise awareness.

every effort to choose students with a diversity of backgrounds, interests, and experiences. Each school shall endeavor to choose at least two students who are members of the school's GSA.

2.      The meetings shall last at least one class period, and students must be specifically asked about and provided with the opportunity to discuss any concerns they have about incidents of harassment.

3.      During each meeting, the District will emphasize its commitment to having a school environment free from all harassment and inform attendees about the Task Force (*see* Section V.G. at pp. 34-36 of this Consent Decree), including identifying the representatives on the Task Force from that particular school.

4.      If students identify any specific incidents of harassment during or after the meeting, the District will commence an investigation of each incident as soon as possible, in accordance with the *HVD Policy*. If students express concerns about the school climate, the District will address the concerns consistent with the terms of this Consent Decree.

5.      During each meeting, the District will also remind the students of their right to file a complaint of harassment at any time they believe they have been subjected to harassment and will advise the students of the procedure they should follow if they wish to do so.

6.      During each meeting, the District will inform students that if they have concerns they wish to share with the Superintendent or Associate Superintendent

privately, they may do so immediately after the group meeting or at any other time by email.

       7.     The Superintendent or an Associate Superintendent shall submit a written summary of all meetings, identifying key issues by school and all necessary follow-up tasks, if any, to the Equity Consultant, the Title IX Coordinator, the Equity Coordinator and the United States no later than thirty (30) calendar days after all of the middle and high school meetings have taken place in that school year.

       K.     <u>Monitoring and Assessment of Program Effectiveness</u>

       1.     By September 4, 2012, the District will develop and begin implementing a monitoring program to assess the effectiveness of its anti-harassment efforts. In developing the monitoring program, the District will consider the recommendations and suggestions made by the Equity Consultant.

       2.     At the conclusion of each school year, the District, in collaboration with the Equity Consultant, the Title IX Coordinator, and the Equity Coordinator, will conduct an annual assessment of the effectiveness of the District's anti-harassment efforts. Such assessment shall include, but is not limited to:

       a.     A review of the Anti-Bullying/Anti-Harassment Task Force Report(s);

       b.     A review of the anti-bullying surveys and related analysis;

c.      The Title IX Coordinator's review of all reports of sex-based harassment and District responses thereto in its electronic database, including any and all supporting documentation and/or underlying analyses;

d.      The Equity Coordinator's review of all reports of sexual orientation-based harassment and District responses in its electronic database;

e.      An analysis of all harassment incidents in the District disaggregated by the sex, school, and grade of both the accused harasser and harassed student;

f.      Evaluation and analysis of the data collected, including an assessment of whether the reported incidents of harassment have increased or decreased in number and severity; whether certain students are repeatedly harassed or repeated alleged perpetrators in harassment complaints; and differences between and among individual District schools in the numbers, types, and severity of harassment incidents.

3.      Based on the annual assessment conducted pursuant to Section V.K.2. at pp. 40-41, the District shall develop recommendations for ways to improve its anti-harassment program.

4.      By July 15 of each year this Consent Decree is in effect, the District shall submit to the United States for review: (1) a report analyzing all of the information collected and reviewed pursuant to Section V.K.2. at pp. 40-41; (2) its proposed recommendations for improvements to its anti-harassment program pursuant to Section V.K.3. at p. 41; and (3) timelines for the implementation of the recommendations.

5.      If the United States provides comments on the District's proposed recommendations for improvement actions and timelines for their implementation, it will do so no later than the first Friday in August of each year.  The District shall incorporate the United States' comments into the District's action plans, unless the District disagrees with the recommendations.  If the parties disagree about the United States' comments to the District's proposed recommendations, the District and the United States will work together in good faith to resolve any disagreements.   If the District and the United States are unable to resolve any disagreements in a reasonable period of time, either party may request that the Court mediate the dispute.

L.    Reporting

1.      The District will provide all reports, documents, and information required to be produced to the United States, including all information required pursuant to this Consent Decree, in electronic form, usable by the United States, or in written form if the data in electronic form would not be usable, in accordance with the timelines set forth herein.[4]

---

[4]      The District shall provide to DOJ and OCR one copy of all documents and information it is required to produce to the United States in this Consent Decree, directed to the following attorneys:

Torey Cummings and Tamica Daniel      Leticia Soto
U.S. Department of Justice                      U.S. Department of Education
Civil Rights Division                             Office for Civil Rights
Educational Opportunities Section, PHB 4300      Citigroup Center
601 D Street NW                                500 W. Madison Street Suite 1475
Washington, DC 20004                         Chicago, IL 60661-7204

42

a.     The District shall produce to the United States all reports, documents, and information required by this Consent Decree, including those that contain private student information.  The law enforcement exception to the Family Educational Rights and Privacy Act ("FERPA") applies to the United States in this matter, allowing it to receive documents containing private student information.  *See* 20 U.S.C. § 1232g (b)(1)(C)(ii); *see also United States v. Bertie Cnty. Bd. of Educ.*, 319 F. Supp. 2d 669, 671–72 (E.D.N.C. 2004).  The United States shall maintain the confidentiality of any protected private student information it receives from the District.

b.     The District acknowledges that, pursuant to the Minnesota Government Data Practices Act, Minn. Stat. § 13.01–13.99 ("MGDPA"), the Student Plaintiffs are entitled, upon request, to copies of all documents that the District is required to provide to the United States pursuant to this Consent Decree, with any private data redacted as required by statute.  The District agrees that it will provide those documents to counsel for the Student Plaintiffs pursuant to their request under Minn. Stat. § 13.03, subd. 3, appended hereto as Exhibit F.  Such reports will be provided concurrently with the District's delivery of those reports to the United States.  However, the District shall not produce to Student Plaintiffs any documents or information containing private student information subject to FERPA, *see* 20 U.S.C. § 1232g, and the MGDPA.  Instead, the District will provide documents or information containing private student information to the United States only.  The United States will then provide Student Plaintiffs with summaries or redacted reports so that Student Plaintiffs do not receive any private student

43

information.  The District agrees to promptly notify Student Plaintiffs and the United States of the submission of any reports to the United States that are in need of redaction.

2.      If the District, despite its good faith efforts, is unable to meet any timeline set forth in this Consent Decree, it will immediately notify the United States, of the delay and the reason therefor. The United States may provide a reasonable extension of the timeline at issue and will consider any request for extension of time in good faith.

3.      At the end of each trimester, the District will provide documentation of its compliance with this Consent Decree through written electronic compliance reports, which will be produced to the United States within fourteen (14) school days of the last day of each trimester of each year this Consent Decree is in force.  Each compliance report will cover the immediately preceding trimester, and will include the following information and documents:

a.      The date and duration of each training session required by this Consent Decree; copies of all agendas for such training sessions; and copies of any training materials distributed at the trainings, including videos or Power Point presentations;

b.      The number of people, by position and school, who did not receive each required training and the District's plan for these individuals to receive the training(s) they missed. The District will provide additional verification of completed training for those individuals who received rescheduled training;

44

c.    A summary of harassment incidents that includes data, by school, on: the number and types of complaints; the prevalence of each type of harassment (e.g., physical, verbal, or written); the remedial or disciplinary actions taken; the sex of harassed student and accused harasser; and any other relevant information. Copies of all supporting documentation shall be maintained at the Title IX Coordinator or the Equity Coordinator's office for review, upon request, by the United States;

d.    Copies of any District policies and procedures related to harassment or discrimination that the District has revised, adopted, or rescinded since the last compliance report;

e.    Certification by the Title IX Coordinator that he or she has reviewed all harassment incidents related to bullying, discrimination, and harassment based on sex, and all documentation related to such incidents, to determine whether all harassment incidents were properly identified, investigated, and resolved consistent with District policies and procedures, or, if not, that he or she has taken appropriate corrective action pursuant to Section V.B.4. at pp. 18-21 of this Consent Decree;

f.    Certification by the Equity Coordinator that he or she has reviewed all harassment incidents related to bullying, discrimination, and harassment based on sexual orientation, and all documentation related to such incidents, to determine whether all harassment incidents were properly identified, investigated, and resolved consistent with District policies and procedures, or, if not, that he or she has taken appropriate corrective action pursuant to Section V.C.3. at p. 21 of this Consent Decree;

45

g.      Certification by the Title IX Coordinator that, if and when corrective action was necessary for Title IX compliance pursuant to Section V.B.4.c at pp. 19-20 of this Consent Decree, he or she, at a minimum, took the following corrective action:  reviewed all documentation from the incident; identified all areas where the school or District response did not comply with District policies and procedures; initiated timely steps to remedy violations of District policies and procedures; and contacted the parent(s) of the student(s) subject to the harassment and parent(s) of the offending student(s) to inform them of the Title IX Coordinator's involvement in the matter, the applicable policies and procedures, and the timeline for resolving the underlying complaint;

h.      Certification by the Equity Coordinator that, if and when corrective action was necessary for MHRA compliance pursuant to Section V.C.3. at p. 21 of this Consent Decree, he or she, at a minimum, took the following corrective action: reviewed all documentation from the incident; identified all areas where the school or District response did not comply with District policies and procedures; initiated timely steps to remedy violations of District policies and procedures; and contacted the parent(s) of the student(s) subject to the harassment and the parent(s) of the offending student(s) to inform them of the Equity Coordinator's involvement in the matter, the applicable policies and procedures, and the timeline for resolving the underlying complaint; and

i.      Certification by the District that it has fully and sufficiently addressed all incidents alleging harassment.

46

M.     Enforcement

1.     The United States will monitor and review compliance with this Consent Decree.

2.     As part of its responsibility to monitor and review compliance with this Consent Decree, the United States may observe trainings, interview District staff and students (including ex parte communications with students and employees other than school and District administrators), and request such additional reports or data as are necessary for the United States to monitor the District and to determine whether the District is in compliance with this Consent Decree.  A response to a request by the United States for additional reports or data necessary to determine if the District is in compliance with this Consent Decree shall not be unreasonably withheld.  Also, with ten (10) calendar days advance notice, the United States may visit any school in the District to monitor compliance with the terms of this Consent Decree and the District agrees to provide full access to the United States to perform such monitoring.

3.     In the event that the United States believes that the District has violated any provision of this Consent Decree, the United States will provide written notice (including the relevant section(s) of this Consent Decree and the factual basis) of such violation to all parties, and the District shall then respond to such notice and/or cure such non-compliance within thirty (30) calendar days.  The parties shall negotiate in good faith in an attempt to resolve any dispute relating thereto before the United States seeks relief with the Court.  If the District and the United States are unable to resolve any

disagreements in a reasonable period of time, any party may request that the Court mediate the dispute.

4.      Where there is a requirement in this Consent Decree that the District submit material to the United States for review and approval for compliance with Title IV and Title IX, their implementing regulations, OCR Guidance, this Consent Decree, and the underlying reasons for this Consent Decree, and the District is unable to obtain approval that it believes has been unreasonably withheld, the District will raise its concerns in writing with the United States and the United States shall then respond to such notice and/or issue the approval within thirty (30) calendar days of receipt of written notice.  The United States and the District shall negotiate in good faith in attempt to resolve any dispute relating thereto before seeking relief.  If the District and the United States are unable to resolve any disagreements in a reasonable period of time, any party may request that the Court mediate the dispute.

5.      If any dispute under this Consent Decree is not resolved pursuant to Sections V.M.1-4, *supra* at pp. 46-47, any aggrieved party may file a motion with the Court for such further orders as may be necessary for, or consistent with, the enforcement of this Consent Decree.

## VI.      STUDENT PLAINTIFFS' RELEASES, REPRESENTATIONS AND WARRANTIES

The terms and conditions in this Section VI are by and between only the Student Plaintiffs and the District:

A.    In exchange for the full and final release of claims as set forth in Section VI.B., the District's insurance carrier shall pay to the Student Plaintiffs the total amount of Two Hundred Seventy Thousand Dollars ($270,000) within ten (10) business days of the entry of the Court's approval of the Petitions for Approval of Settlement of Claims of Minor Plaintiffs.  Such payments shall be consistent with Minn. Stat. § 540.08, where applicable.

B.    In consideration of the terms set forth in this Consent Decree, the sufficiency of which is hereby acknowledged, each Student Plaintiff does hereby release and forever discharge the District; the School Board; the members of the School Board, and any and all of the District's departments or divisions; together with all past and present Board members, officers, employees, agents, insurers, reinsurers, and self-insurers; attorneys and each and every one thereof, from all actions, claims, causes of action, suits, debts, sums of money, controversies, trespasses, and demands whatsoever in law or in equity, including claims for attorneys' fees or costs, that were or could have been asserted in the Complaints.

C.    The Student Plaintiffs certify, represent, and warrant that they are authorized to enter into and consent to the terms and conditions of the Consent Decree and to execute and legally bind the parties to it.

D.    The Student Plaintiffs hereby certify, represent, and warrant that (a) they are the only and lawful owners of the claims and causes of action arising out of the facts giving rise to the allegations described in the Action, and (b) they have not assigned or

49

otherwise transferred to any other third party or entity any interest in any claim or cause of action arising out of the facts giving rise to the allegations described in the Action.

E.      Each Student Plaintiff certifies that to the extent he or she has received Medicare or Medicaid benefits arising out of and/or relating in any manner to the Action he or she has provided notice of the Action and will provide additional notice of this Consent Decree as mandated by applicable law.  Each Student Plaintiff further certifies that he or she will honor such subrogation claims as are ultimately asserted relating to his or her receipt of Medicare and/or Medicaid benefits.  Student Plaintiffs acknowledge that any and all past, present and/or future medical expenses and/or benefits, expenses, reimbursements, liens and/or costs of any kind arising out of and/or relating in any manner to the Action shall be their sole and continuing responsibility and not that of the District or its insurer.  Each Student Plaintiff further certifies that he or she will honor any valid subrogation claims that are asserted relating to his or her receipt of non-governmental medical benefits.

F.      The Student Plaintiffs represent and warrant that—other than the complaints filed in this Action—they have filed no other complaints, charges or other claims against the District in any court or administrative or regulatory body (including but not limited to the Minnesota Department of Education or the U.S. Department of Education).

G.      The Student Plaintiffs agree that they shall not represent this Consent Decree or any agreements contained herein as an admission of liability or wrongdoing on

50

the part of the District or any of the individual defendants named in the Action. The Student Plaintiffs further agree that they will not identify individual District defendants or other District employees by name in public statements concerning the allegations in the Complaints or resolution of this matter. If the District believes that one or more of the Student Plaintiffs has violated this provision, the District may seek an order of the Court requiring the violating Student Plaintiff(s) to issue a corrective statement, but only after first providing the Student Plaintiff(s) the opportunity to issue a corrective statement within 10 days of receipt of notice of any claimed violation of this provision.

I.     Each of the Student Plaintiffs and the District is responsible for the tax implications that may occur to the party or their attorneys in connection with the payment or receipt of funds pursuant to this Consent Decree. The District has made no representation regarding the taxability of the payments made to Student Plaintiffs pursuant to this Consent Decree. The District will not be liable for any tax consequence to the Student Plaintiffs as a result of the payments made pursuant to this Consent Decree.

J.     The Student Plaintiffs, by their signatures to this Consent Decree, acknowledge and agree that they have carefully read and understood all provisions of this Consent Decree and that they have entered into this Consent Decree knowingly and voluntarily. The Student Plaintiffs acknowledge that they have been represented by their own attorneys, and that they are voluntarily entering into this Consent Decree to resolve the causes of action that were or could have been brought in the Complaints, and that this

Consent Decree is agreed to and signed with the intent that it be final, binding, and enforceable. The Student Plaintiffs also acknowledge that they have agreed to settle their claims based on the advice and recommendation of their own attorneys, and that the District has not made any representations or advised them as to the terms of this Consent Decree.

K.      The Student Plaintiffs are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the claims that were settled and released in this Consent Decree.

## VII.   MISCELLANEOUS

A.      This Consent Decree shall remain in effect for five (5) years from the date of entry. The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree.

B.      In consideration of, and consistent with, all the terms of this Consent Decree, the United States agrees to refrain from undertaking further investigation into, or pursuing further legal proceedings regarding, all matters contained within the Consent Decree, except those rights and remedies identified in the Consent Decree.

C.      The requirements and procedures in this Consent Decree shall be implemented consistent with the rights and protections afforded under the MGDPA; FERPA; 20 U.S.C. § 1232g; 34 C.F.R. Part 99; Health Insurance Portability and Accountability Act of 1996, Public Law 104-191, 45 C.F.R. Parts 160, 162, and 164 ("HIPAA"); and other applicable law.

D.     In consideration of, and consistent with, all the terms of this Consent Decree, the Student Plaintiffs' Complaints are hereby dismissed with prejudice and without taxing costs to any party.  Student Plaintiffs retain the right to petition the Court for the purpose of enforcing their individual rights under Sections V.L.1.b. at p. 42-43 and VI.A. at p. 48 of this Consent Decree. In the event that the Student Plaintiffs believe that the District has violated either Sections V.L.1.b. at p. 42 or VI.A. at p. 48, the Student Plaintiffs will provide the District written notice of such violation, and the District shall have ten (10) calendar days to cure any violation.

E.     In consideration of, and consistent with, all the terms of this Consent Decree, the United States' Complaint-in-Intervention is hereby dismissed with prejudice and without costs to any party.  The United States retains the right to petition the Court, at any time during the duration of this Decree, for the purpose of enforcing the Decree consistent with Section V.M.3 at p. 47 of this Consent Decree.

F.     The individual defendants named in the Student Plaintiffs' Complaints shall not have any individual responsibility to carry out any of the requirements of this Consent Decree, except (to the extent applicable) as employees of the District.

G.     The parties agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described herein.  To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described herein, the

party is no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves any party of any other obligations imposed by this Consent Decree.

H.     This Consent Decree, including its attached exhibits, constitutes the entire agreement by the parties and no other statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written Consent Decree, shall be enforceable regarding the matters raised in this Decree.

I.     This Consent Decree is final and has binding effect on the parties, including all principals, agents, executors, administrators, representatives, employees, successors in interest, beneficiaries, assigns, and legal representatives thereof.

J.     Failure of a party to seek enforcement of this Consent Decree pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances or any provisions.

K.     This Consent Decree does not cover any other pending or future complaints or investigations by OCR and/or DOJ.

L.     This Consent Decree does not affect the District's duty to comply with the Equal Protection Clause, Title IV, Title IX, the MHRA, or any other law.

M.     The District (including its officers, agents, affiliates, subsidiaries, servants, employees, and all other persons or entities in active concert or privity with it) agrees not to retaliate against any student or employee who in relation to the allegations outlined above has testified, assisted, or participated in a proceeding or investigation under the Equal Protection Clause, Title IV, Title IX, or the MHRA.

54

N.     The undersigned representatives of the parties certify that they are authorized to enter into and consent to the terms and conditions of the Consent Decree and to execute and legally bind the parties to it.

O.     All parties to this Consent Decree shall undertake all reasonable and necessary action to facilitate approval of this Consent Decree, including but not limited to jointly petitioning the Court for approval under applicable Minnesota Statutes and governing law for minor settlements and school district settlements.

P.     If any provision of this Consent Decree is determined by any court to be unenforceable, the other terms of this Consent Decree shall nonetheless remain in full force and effect, provided however, that if the severance of any such provision materially alters the rights or obligations of the parties, the United States, Student Plaintiffs, and the District shall engage in good-faith negotiations in order to adopt such mutually agreeable amendments to this Decree as may be necessary to restore the parties as closely as possible to the initially agreed-upon relative rights and obligations.

Q.     The Court orders that nothing in this Consent Decree shall be construed as an acknowledgement, admission, or evidence of liability of the District or any individual defendant.  The Court further orders that nothing in this Consent Decree may be used as evidence of District liability by Student Plaintiffs or any other private litigants in any other proceeding.

R.     The Court hereby refers to the Magistrate Judge all matters regarding the management and execution of the Consent Decree, pursuant to 28 U.S.C. § 636.

**SO ORDERED**


_____
Honorable Joan N. Ericksen
United States District Judge



Dated: _____

**FOR THE UNITED STATES OF AMERICA:**

B. TODD JONES                          THOMAS E. PEREZ
United States Attorney                 Assistant Attorney General
District of Minnesota                  Civil Rights Division
United States Department of Justice    United States Department of Justice


GREGORY G. BROOKER, #0166066           ANURIMA BHARGAVA, Chief
ANA H. VOSS, #0483656                  KATHLEEN S. DEVINE, Senior Counsel
Assistant United States Attorneys      Civil Rights Division
United States Attorney's Office        Educational Opportunities Section
District of Minnesota
600 United States Courthouse
300 South Fourth Street                s/ Torey B. Cummings
Minneapolis, MN 55415                  TOREY B. CUMMINGS
Tel: 612-664-5600                      (*admitted pro hac vice*)
greg.brooker@usdoj.gov                 TAMICA H. DANIEL
anna.voss@usdoj.gov                    (*admitted pro hac vice*)
                                       Trial Attorneys
                                       U.S. Department of Justice
                                       Civil Rights Division
                                       Educational Opportunities Section
OFFICE FOR CIVIL RIGHTS                950 Pennsylvania Avenue, NW
OFFICE OF THE GENERAL                  Washington, D.C. 20530
COUNSEL                                Tel: 202-305-4204
U.S. Department of Education           torey.cummings@usdoj.gov
Of Counsel                             tamica.daniel@usdoj.gov


Dated: March 1, 2012

**FOR DEFENDANT ANOKA-HENNEPIN SCHOOL DISTRICT:**

Dated: <u>March 5, 2012</u>            <u>s/ Paul Cady</u>
                                        Paul Cady, #0189406
                                        General Counsel
                                        Anoka-Hennepin School District
                                        11299 Hanson Blvd. N.W.
                                        Coon Rapids, MN 55433
                                        Tel: 763-506-1089
                                        paul.cady@anoka.k12.mn.us

**STUDENT PLAINTIFFS:**

Dated: <u>March 1, 2012</u>        <u>s/ Jane Doe</u>
                                                Jane Doe


                                                E.R., by her next friend and parent, Quana Hollie

Dated: <u>March 1, 2012</u>        <u>s/ Quana Hollie</u>
                                                Quana Hollie


                                                K.R., by his next friends and parents,
                                                Rebecca Rooker and Jim Rooker

Dated: <u>March 1, 2012</u>        <u>s/ Rebecca Rooker</u>
                                                Rebecca Rooker

Dated: <u>March 1, 2012</u>        <u>s/ Jim Rooker</u>
                                                Jim Rooker


                                                D.F., by his next friends and parents,
                                                Burnetta Frei and Jeffrey Frei

Dated: <u>March 1, 2012</u>        <u>s/ Burnetta Frei</u>
                                                Burnetta Frei

Dated: <u>March 1, 2012</u>        <u>s/ Jeffrey Frei</u>
                                                Jeffrey Frei


                                                B.G., by her next friends and parents, Marty Geldert
                                                and Michael Geldert

Dated: <u>March 1, 2012</u>        <u>s/ Marty Geldert</u>
                                                Marty Geldert

Dated: <u>March 1, 2012</u>        <u>s/ Michael Geldert</u>
                                                Michael Geldert
                                                D.M.-B., by his next friends and parents,

Michael McGee and Jason Backes

Dated:  March 1, 2012          s/ Michael McGee
                               Michael McGee

Dated:  March 1, 2012          s/ Jason Backes
                               Jason Backes

**AS TO FORM, COUNSEL FOR STUDENT PLAINTIFFS
JANE DOE, K.R., D.F., B.G. and D.M.-B.**

Dated:  March 1, 2012          FAEGRE BAKER DANIELS LLP

                               s/ Michael A. Ponto
                               Michael A. Ponto, #203944
                               Martin S. Chester, #031514X
                               Christopher H. Dolan, #0386484
                               Zack L. Stephenson, #0391533
                               2200Wells Fargo Center
                               90 South Seventh Street
                               Minneapolis, MN 55402-3901
                               (612) 766-7000
                               michael.ponto@FaegreBD.com
                               martin.chester@FaegreBD.com
                               chris.dolan@FaegreBD.com
                               zach.stephenson@FaegreBD.com

                               SOUTHERN POVERTY LAW CENTER
                               Mary Bauer (*admitted pro hac vice*)
                               Christine P. Sun (*admitted pro hac vice*)
                               Samuel Wolfe (*admitted pro hac vice*)
                               400 Washington Avenue
                               Montgomery, AL 36104
                               mary.bauer@splcenter.org
                               christine.sun@splcenter.org
                               sam.wolfe@splcenter.org
                               (334) 956-8200

NATIONAL CENTER FOR LESBIAN RIGHTS
Christopher Stoll (*admitted pro hac vice*)
870 Market Street, Suite 370
San Francisco, CA 94102
cstoll@nclrights.org
(415) 365-1335


**AS TO FORM, COUNSEL FOR STUDENT PLAINTIFF E.R.**


Dated:  March 1, 2012              CULBERTH & LIENEMANN, LLP


                                   s/ Celeste E. Culberth
                                   Celeste E. Culberth, #228187
                                   Leslie E. Lienemann, #23019
                                   1050 UBS Plaza
                                   444 Cedar Street
                                   St. Paul, MN  55101
                                   cculberth@clslawyers.com
                                   llienemann@clslawyers.com
                                   (651) 290-9305

                                   NATIONAL CENTER FOR LESBIAN RIGHTS
                                   Christopher Stoll (*admitted pro hac vice*)
                                   870 Market Street, Suite 370
                                   San Francisco, CA 94102
                                   cstoll@nclrights.org
                                   (415) 365-1335